FILED
2024 Feb-13 PM 01:41
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **JUDY FREEMAN,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 4:23-cv-71-ACA |
| | ) |
| **SOCIAL SECURITY** | ) |
| **ADMINISTRATION,** | ) |
| **COMMISSIONER,** | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Plaintiff Judy Freeman appeals the decision of the Commissioner of Social Security denying her claim for a period of disability and disability insurance benefits. Based on the court's review of the administrative record and the parties' briefs, the court **WILL AFFIRM** the Commissioner's decision.

**I.     PROCEDURAL HISTORY**

Ms. Freeman applied for a period of disability and disability insurance benefits, alleging disability beginning September 1, 2018. (R. at 377). The Commissioner denied Ms. Freeman's claim and her motion for reconsideration. (*Id.* at 203–14). Ms. Freeman then requested a hearing before an Administrative Law Judge ("ALJ") (*Id.* at 216). After holding a hearing (*id.* at 80–117), an ALJ issued an unfavorable decision (r. at 159–79). The Appeals Council granted Ms. Freeman's

request for review and remanded Ms. Freeman's claim for a new hearing and decision. (*Id.* at 180–84).

On remand, an ALJ held a second hearing (*Id.* at 43–79) and issued another unfavorable decision (*id*. at 15–32). The Appeals Council denied Ms. Freeman's request for review (r. at 1–6), making the Commissioner's decision final and ripe for judicial review, *see* 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The court "must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation marks omitted). "Under the substantial evidence standard, this court will affirm the ALJ's decision if there exists such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (quotation marks omitted). The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]." *Winschel*, 631 F.3d at 1178 (quotation marks omitted). The court must affirm "[e]ven if the evidence preponderates against the Commissioner's findings." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004) (quotation marks omitted).

Despite the deferential standard for review of claims, the court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Henry*, 802 F.3d at 1267 (quotation marks omitted). Moreover, the court must reverse the Commissioner's decision if the ALJ does not apply the correct legal standards. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

**III.   ALJ'S DECISION**

To determine whether an individual is disabled, an ALJ follows a five-step sequential evaluation process. The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

Here, the ALJ determined that Ms. Freeman had not engaged in substantial gainful activity since her alleged onset date of September 1, 2018 through her date last insured of June 30, 2020. (R. at 18). The ALJ found that Ms. Freeman's neuropathy and lumbar radiculopathy were severe impairments, but that her carpal tunnel syndrome, hyperlipidemia, chronic pain syndrome, anxiety, adjustment

disorder, personality disorder, and vitamin deficiency were non-severe impairments. (*Id.* at 18–19). The ALJ then concluded that Ms. Freeman does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (*Id.* at 21).

After considering the evidence of record, the ALJ determined that Ms. Freeman

> had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except never climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs, balance, crouch, kneel, and crawl; frequently stoop; frequently finger and handle; should avoid concentrated exposure to temperature extremes, vibration, unprotected heights, and dangerous moving machinery.

(*Id*. at 21–22). Under applicable regulations, sedentary work

> involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

Based on this residual functional capacity and the testimony of a vocational expert, the ALJ concluded that Ms. Freeman could perform her past relevant work as an accounting clerk. (R. at 31). Accordingly, the ALJ found that Ms. Freeman

was not disabled, as that term is defined in the Social Security Act, from her alleged onset date through the date last insured. (*Id.* at 31–32).

## IV. DISCUSSION

Ms. Freeman argues that the court should reverse the Commissioner's decision because: (1) the ALJ erred in her consideration of the medical opinion evidence and failed to properly determine Ms. Freeman's residual functional capacity; (2) the ALJ erred by finding Ms. Freeman's mental impairments were non-severe; (3) the ALJ did not properly evaluate Ms. Freeman's subjective pain testimony. (Doc. 6 at 3–35). The court considers each issue in turn.

### 1.    Opinion Evidence and Residual Functional Capacity

Ms. Freeman's first argument is that the ALJ did not properly evaluate the opinions of Dr. Stephen Henderson or Dr. Keith Morgan. (Doc. 6 at 3–16).

Under applicable regulations, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. § 404.1520c(a). Instead, the ALJ considers the persuasiveness of a medical opinion using the following five factors: (1) supportability; (2) consistency; (3) the relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, and the purpose and extent of the treatment relationship; (4) specialization; and (5) other factors, including evidence showing the medical source has familiarity with other evidence or an understanding of the Social Security

5

Administration's policies and evidentiary requirements. *Id.* § 404.1520c(c). Supportability and consistency are the most important factors, and the ALJ must explain how she considered those factors. *Id.* § 404.1520c(b)(2). The ALJ may, but is not required to, explain how she considered the other factors. *Id.*

In November 2018, Dr. Morgan conducted a consultative examination of Ms. Freeman on behalf of the Social Security Administration. (*See* r. at 613–24). Dr. Morgan observed that Ms. Freeman "is able to ambulate independently," had "[n]o increased temperature of the joints," and had "a normal gait." (*Id*. at 613–14). During the assessment, Ms. Freeman stated that "during a typical day she is independent," but that she "could only sit for [two] hours," "could only stand for [two] hours," "could only walk for two hours," and "could only travel for [two] hours" before developing neuropathy in her feet. (*Id*. at 613). Dr. Morgan's assessment echoed Ms. Freeman's statements: that she could do the work-related activities of sitting, standing, walking, and traveling for two hours. (*Id*. at 622).

The ALJ found Dr. Morgan's opinion to be "unpersuasive" because it was based on Ms. Freeman's own functional ability assessments and was inconsistent with Dr. Morgan's own findings. (R. at 24, 30). The ALJ specifically observed that Dr. Morgan's assessment concluded that Ms. Freeman's range of motion chart reflected no abnormalities, that Ms. Freeman had a normal gait, and that she had a get-up-and-go of eight seconds. (*Id*.; *see also id*. at 621–22).

6

In September 2018, Ms. Freeman visited Dr. Henderson, who is her primary care physician (*id.* at 29), for a routine appointment (*see* r. at 568). Ms. Freeman indicated that some pain had improved but that she still experienced "stabbing pains." (*Id.* at 568). She reported that she "has to stand on a towel and has to [take] her shoes off here in the office." (*Id.*).

In May 2019, Ms. Freeman reported driving five hours although it exacerbated her neuropathy. (*Id.* at 666). During that visit and another visit that occurred one month later, Dr. Henderson observed that Ms. Freeman "ha[d] slowly increased her walking from 30 [minutes] gradually to 45 [minutes] to 1 hour." (R. at 664, 666). Dr. Henderson reported that Ms. Freeman's walking was "the most that she has ever" done. (*See id.*).

In June 2019, Dr. Henderson completed a lower extremities impairment questionnaire for Ms. Freeman (*id.* at 648–53). The question noted Ms. Freeman's diagnoses as poly neuropathy unspecified and hypercholesterolemia and that Ms. Freeman was "overweight." (*Id.* at 648). Dr. Henderson observed that Ms. Freeman's "toes [and] fingers get red [and] warm periodically" and that Ms. Freeman was developing balance problems and could not sense the position of her feet. (R. at 648–49). Despite these limitations, Ms. Freeman was able to "ambulate effectively . . . on a sustained basis" and did not require an assistive device to stand or walk. (*Id.* at 650) (quotation marks omitted). Nevertheless, Dr. Henderson

7

determined that Ms. Freeman could perform a job in a seated position for less than an hour; perform a job standing and/or walking for less than one hour; needed to get up from a seated position every fifteen minutes; and must return to a seated position after thirty minutes. (*Id*. at 650–51).

The ALJ found Dr. Henderson's opinion of "limited persuasiveness" because it was "not entirely consistent with his own treatment notes nor the overall evidence." (*Id*. at 29). Specifically, the ALJ explained that Dr. Henderson's treatment notes reflected that Ms. Henderson had a normal gait and could participate in daily living activities that required more walking and standing capacity than Dr. Henderson determined in the assessment. (*See* r. at 29; *see also id*. at 650, 788–91).

Ms. Freeman contends that the ALJ did not meaningfully articulate how she considered the consistency and supportability of these medical opinions before she assigned them little weight. (Doc. 6 at 14). But the administrative record simply does not support that argument. The ALJ articulated medical evidence that was inconsistent with Dr. Henderson's and Dr. Morgan's opinions. (*See* r. at 29–30). And she accurately described the objective medical evidence that she relied on. (*See id*.).

Ms. Freeman further contends that the ALJ "failed to provide a meaningful discussion" of her diagnosis of small fiber neuropathy that occurred after her date of last insured. (*See* doc. 6 at 10–11). A diagnosis that occurred after Mr. Freeman's

8

date of last insured is only relevant to the extent that it speaks to the nature and severity of Ms. Freeman's condition prior to the date last insured. *See, e.g., Payne v. Weinberger*, 480 F.2d 1006, 1007–08 (5th Cir. 1973).[1] The ALJ acknowledged Ms. Freeman's new diagnosis and that Ms. Freeman's "condition may have deteriorated after the date last insured," and the ALJ explained that her "residual functional capacity . . . is consistent with the medical evidence during the relevant period." (R. at 26–27). Because the ALJ accurately described the objective medical evidence that she relied on, the court will not disturb the ALJ's assessment.

At its core, Ms. Freeman's argument is not about whether the ALJ adhered to the appropriate regulations when evaluating Dr. Henderson's and Dr. Morgan's medical opinions. Instead, Ms. Freeman asks the court to impermissibly "decide the facts anew, reweigh the evidence, or substitute" the court's "judgment for that of the Commissioner." *Winschel*, 631 F.3d at 1178 (quotation marks and alteration omitted); *see also Crawford*, 363 F.3d at 1158–59 ("Even if the evidence preponderates against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence.") (quotation marks omitted).

Ms. Freeman next argues that the ALJ assigned impermissible significance to Dr. Henderson's discussion of her ability to perform daily living activities. (*See* doc.

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

6 at 11). Undeniably, "participation in everyday activities of short duration, such as housework or fishing, [does not] disqualif[y] a claimant from disability." *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997). But the ALJ observed that Dr. Henderson specifically opined that Ms. Freeman could perform everyday activities that exceeded and appeared inconsistent with the limitations Dr. Henderson proposed such as walking a block at a reasonable pace, using public transportation, "routine ambulatory activities such as shopping and banking," and climbing a few stairs at a time. (R. at 29) (citing *id.* at 650). Again, this argument asks the court to impermissibly "decide the facts anew, reweigh the evidence, or substitute" the court's "judgment for that of the Commissioner." *Winschel*, 631 F.3d at 1178 (quotation marks and alteration omitted).

Finally, Ms. Freeman contends that because the ALJ found her treating doctors' opinions of limited persuasiveness, it is unclear what medical opinions the ALJ relied on to determine her residual function capacity. (Doc. 6 at 15). This argument fails because the ALJ has the sole responsibility of assessing a claimant's residual functional capacity. 20 C.F.R. § 404.1546(c). And the regulations permit the ALJ to decline to give "any specific evidentiary weight, including controlling weight, to any medical opinion[s]." *See id.* § 404.1520c(a). The ALJ rejected the physicians' opinions but based her residual functional capacity determination on the

medical record, including Ms. Freeman's treatment notes from Dr. Henderson. Substantial evidence supports that determination.

Accordingly, the court will not disturb the ALJ's articulated findings concerning Dr. Henderson's and Dr. Morgan's opinions.

2. Non-Severe Mental Impairments

Ms. Freeman's second argument is that the ALJ erred in finding that her mental impairments were non-severe. (Doc. 6 at 16–30).

"[T]he finding of any severe impairment" at step two of the sequential evaluation process is sufficient for an applicant to move on to step three. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). And at step three, an ALJ considers an applicant's medical condition, not merely the impairments classified as severed. *See id*. Accordingly, errors at step two are harmless so long as the applicant moves on to step three. *See id.*

Despite not considering Ms. Freeman's mental impairments to be a severe impairment, the ALJ determined that Ms. Freeman suffered two other severe impairments that allowed her application to proceed. (*See* r. at 18). Thus, Ms. Freeman's contention that the ALJ failed to consider her mental impairments a severe impairment is at most harmless error. *See Jamison*, 814 F.2d at 588. Nor does any error at step two affect the ALJ's residual factual capacity determination at step four. *See id*.

When assessing Mr. Freeman's residual functional capacity, the ALJ considered the effect of Ms. Freeman's mental impairments. (*See* r. at 23, 28–29). Indeed, the ALJ summarized the State agency medical consultants' findings as to Ms. Freeman's mental impairments and explained the weight the ALJ gave those findings in assessing Ms. Freeman's residual functional capacity. (*Id.* at 28–29). Put differently, this is not the case where the ALJ "stated [that the ALJ] considered all symptoms when assessing" the claimant's residual functional capacity but "the content of [the ALJ's] decision demonstrates [the ALJ] did not." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1269 (11th Cir. 2019) (quotation marks omitted). The ALJ acknowledged Ms. Freeman's severe and non-severe impairments when assessing Ms. Freeman's residual functional capacity. (*See* r. at 23, 28–29).

On reply, Ms. Freeman argues that the ALJ committed more than harmless error because "there is no evidence [that] the ALJ considered the combined impact of Ms. Freeman's severe and non-severe impairments in determining her residual functional capacity." (*See* doc. 8 at 5–6). But the administrative record simply does not support that argument. The ALJ did consider Ms. Freeman's mental impairment when assessing Ms. Freeman's residual functional capacity. (*See* r. at 23, 28–29).

Accordingly, the court will not disturb the ALJ's findings as to the severity of Ms. Freeman's mental impairments.

3.   Subjective Pain Testimony

Ms. Freeman's third argument is that the ALJ failed to properly evaluate her subjective complaints of pain in accordance with the Eleventh Circuit's subjective testimony standard. (Doc. 6 at 30–35).

Under Eleventh Circuit precedent, a claimant attempting to establish disability through testimony of pain or other subjective symptoms must show evidence of an underlying medical condition and either (1) "objective medical evidence that confirms the severity of the alleged [symptoms] arising from that condition" or (2) "that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged" symptoms. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation marks omitted). If the ALJ finds a claimant's statements about her symptoms are not credible, the ALJ must "provide[ ] a detailed factual basis for [the] credibility determination," which substantial evidence must support. *Moore v. Barnhart*, 405 F.3d 1208, 1212 & n.4 (11th Cir. 2005).

During Ms. Freeman's hearing, she testified that she cannot work because of neuropathy in her feet. (R. at 49). She reported that she took medication which relieved the shooting pains but did not leave her pain free. (*Id*. at 51). Ms. Freeman testified that she experienced constant daily pain in her feet. (*Id*. at 60–61). Ms. Freeman also testified that driving, putting on shoes, or anything touching her

13

feet caused pain. (*Id*. at 49–50, 56, 62). Ms. Freeman testified she could wear shoes for about twenty to thirty minutes. (R. at 62).

After reviewing Ms. Freeman's subjective testimony, the ALJ found that Ms. Freeman's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," but Ms. Freeman's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (*Id*. at 23; *see also id*. at 26–28). Specifically, the ALJ observed that Ms. Freeman's medical records reflected that Ms. Freeman "is independent in her personal care, can drive a car, goes grocery shopping, cooks, and does household chores." (*Id*. at 27). The ALJ did "not find [that Ms. Freeman] is at all times symptom free," but the ALJ observed that "the evidence does not support the degree of limitation [that Ms. Freeman] alleges." (R. at 27). The ALJ then explained how the ALJ accommodated Ms. Freeman's medically supported limitations in her residual function capacity assessment. (*See id*. at 27–28).

Ms. Freeman contends that the ALJ rejected her testimony in "a conclusory ruling" that "is not supported by substantial evidence." (Doc. 6 at 33). But the ALJ identified instances in which Ms. Freeman's testimony contradicted her medical record. (*See* r. at 23–28). Although the ALJ acknowledged that Ms. Freeman is not symptom free, the ALJ credited Ms. Freeman's complaints to the extent that these

complaints adhered to the ALJ's determination that Ms. Freeman could perform sedentary work. Therefore, the ALJ considered Ms. Freeman's subjective complaints with the record as a whole and adequately explained the ALJ's decision not to fully credit Ms. Freeman's alleged limitations on her ability to work. *See Raper v. Comm'r of Soc. Sec.*, 89 F.4th 1261, 1278–79 (11th Cir. 2024).

## V.   CONCLUSION

Substantial evidence supports the ALJ's denial of Ms. Freeman's application for a period of disability and disability insurance benefits. Therefore, the court **WILL AFFIRM** the Commissioner's decision.

**DONE** and **ORDERED** this February 13, 2024.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE